IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LARRY HARRIS                                                                    PLAINTIFF

V.                                                            CIVIL ACTION NO. 3:04cv991WS

AFFILIATED COMPUTER SERVICES, INC.                              DEFENDANT

## FINAL JUDGMENT

On February 25, 2005, the Court entered an order which stayed this cause pending the outcome of arbitration. On January 11, 2006, Arbitrator Denise M. Pilié entered an Award which dismissed all claims of the plaintiff and the Arbitrator also issued Reasons for Award. Copies of the Award and Reasons for Award are attached hereto. There being a final outcome of the arbitration, it is, therefore,

ORDERED AND ADJUDGED that the cause be, and it hereby is dismissed, with prejudice.

SO ORDERED this __31st__ day of __January__, 2006.

s/ **HENRY T. WINGATE**

_____
UNITED STATES DISTRICT JUDGE

APPROVED AS TO FORM

_____
Nick Norris (Bar No. 101574)
Louis H. Watson, Jr., P.A.
Attorney for Plaintiff Larry Harris

_____
John L. Maxey II (Bar No. 1946)
Marjorie S. Busching (Bar No. 100523)
Attorneys for Defendant Affiliated Computer Services, Inc.

## AMERICAN ARBITRATION ASSOCIATION

**LARRY HARRIS AND**
**AFFILIATED COMPUTER SERVICES, INC.**         AAA NO. 69 160 00084 05

### AWARD

Considering the evidence adduced at the hearing, the arguments of counsel and the memoranda submitted by the parties, the undersigned arbitrator hereby awards as follows:

The wrongful discharge claim of Larry Harris is DENIED;

The Motion to Reconsider the Dismissal of Punitive Damages on Summary Judgment is DENIED as moot;

Any remaining claims of Mr. Harris are DENIED.

All costs of this proceeding and the fees of the arbitrator are to be paid in accordance with the Affiliated Computer Services Dispute Resolution Program.

New Orleans, Louisiana, this ___11th___ day of January, 2006.

_____
Arbitrator, Denise M. Pilié

AMERICAN ARBITRATION ASSOCIATION

**LARRY HARRIS AND**
**AFFILIATED COMPUTER SERVICES, INC.**          AAA NO. 69 160 00084 05

REASONS FOR AWARD

1. **The Parties' Claims**

Larry Harris filed this claim against his employer, Affiliated Computer Services, Inc. ("ACS"), alleging wrongful discharge pursuant to the public policy exception of the employment at will doctrine outlined in *McArn v. Allied Bruce Terminix, Inc., 626 So. 2d 603 (Miss. 1993).*[1] This exception makes it unlawful for an employer to terminate an employee for reporting illegal activity of the employer to the employer or to anyone else. Harris alleges that he was terminated for reporting to the Mississippi Department of Environmental Quality ("MDEQ") two unlawful discharges by ACS of water containing silver halide, a pollutant.

ACS defends by saying that Harris was terminated for misrepresenting the truth about these and other discharges to the MDEQ. It was Harris who made the unlawful discharges in the first place, while hiding them from both the MDEQ and ACS. Harris was the manager of the Flora facility where the discharges were made, and it was his responsibility to make sure that it complied with the environmental laws. Harris knew that the discharges were unlawful, and knew that he was having difficulty preventing them due to the design and/or construction of the containment structures into which the silver halide was drained. Nonetheless, he neither reported these problems to ACS nor sought its help to remedy them. Harris also completed Discharge Monitor Reports ("DMRs") on a quarterly basis and reported to the MDEQ that there were "no

---

[1] Harris alleged additional claims in his original demand which were dismissed on summary judgment.

1

discharges" of silver halide when, in fact, there had been numerous such illegal discharges about which Harris was aware.

2.  **The Question Presented**

It is undisputed that Harris was terminated shortly after his report of the two illegal discharges to Mr. Twitty of the MDEQ. The question for the arbitrator is whether his termination was in retaliation for reporting these two discharges to the MDEQ, as alleged by Harris, or for covering up these and other discharges in the first instance when he 1) completed the monthly DMR reports saying there were no discharges, and 2) told the MDEQ about only two discharges when there were, in fact, substantially more discharges at the Flora facility while Mr. Harris was its manager, as alleged by ACS.

3.  **The Arbitrator's Determination**

The arbitrator finds that the weight of the evidence shows that Mr. Harris was terminated for misrepresenting the truth to the MDEQ. There is no dispute that Mr. Harris was the manager of the facility, that he was very knowledgeable about the workings of the rock reed bed and the containment structure, that it was his responsibility to fix these structures if they didn't work, that if the structures didn't work there could be discharges of silver halide, and that such discharges are illegal. Indeed, Mr. Harris knew that there had been several illegal discharges of silver halide and denied these discharges when he completed the DMRs for the MDEQ. Mr. Harris also hid these discharges from ACS. When ACS learned about them, and about the fact that they were covered up intentionally, ACS terminated Mr. Harris.

Mr. Harris claims that he should not be held responsible for these illegal discharges because he was never trained regarding environmental regulations and was never trained how to

2

complete the DMRs. However, despite Mr. Harris' lack of training, he knew that the discharge of silver halide was illegal, and he knew that he was stating that there had been "no discharge" on the DMRs when there had, in fact, been such discharges. One does not need to be trained by one's employer to tell the truth to a state agency, especially when the DMR form itself advises that failure to tell the truth on that document could lead to serious civil and/or criminal consequences.

Mr. Harris also states that he was not the proper party to complete the DMRs in the first place because he was not an officer of the company. Mr. Harris took over the job of completing these forms from Tommy Duggan, his former supervisor, who told him to state "no discharge" on the forms and to send them to the MDEQ. Mr. Harris, therefore, was doing nothing but following company instructions.

Mr. Harris is correct that he is not the proper party to complete the DMRs. Indeed, this is one of the violations for which the MDEQ ultimately fined ACS. However, Mr. Harris was not fired for filling out the DMRs; he was fired for filling out the DMRs untruthfully. And while it is also true that Mr. Duggan told Mr. Harris to fill out the DMRs "no discharge", Mr. Harris testified at the hearing that he understood Mr. Duggan to mean only that he should fill them out this way if there were, in fact, no discharges. Mr. Harris did not understand Mr. Duggan to be telling him to lie when he filled out the forms.

Finally, Mr. Harris claims that after he told Mr. Twitty there had been two illegal discharges, Mr. Twitty threatened Mr. Harris that there could be serious consequences if Mr. Twitty had to dig and dig to get the whole truth, but that he would treat it as a civil matter if Harris came forth voluntarily with additional information. After this threat, Mr. Harris called

Randy Hale, his supervisor, for advice. Mr. Hale scheduled a conference call with himself, Harris, and Mr. Sanders, an ACS safety officer. During this conversation, Mr. Sanders told Mr. Harris a parable allegedly designed to advise Mr. Harris to lie to Mr. Twitty about the additional discharges. Mr. Hale did not counter this alleged advice. As the arbitrator understands Mr. Harris' argument, this demonstrates that ACS intended for him to continue to cover up the discharges to the MDEQ, which, if true, would strengthen Mr. Harris' argument that he was terminated for thwarting ACS' plan to hide these spills.

The arbitrator rejects this argument. Although the arbitrator finds that Mr. Sanders could well have been suggesting that Harris lie to the MDEQ, this alone is insufficient to show that ACS intended to cover up the silver halide spills. No other evidence points to such an intent and no other ACS employee even hinted that Harris should lie. Indeed, Randy Hale later advised Harris to tell the truth about the spills to the MDEQ. The parable evidence would have been more compelling if Mr. Harris also had interpreted Mr. Duggan's advice to write "no discharge" on the DMRs to mean that he should lie on those documents, but Mr. Harris testified that this is not what he understood Mr. Duggan to mean. Moreover, Mr. Sanders was not Mr. Harris' supervisor and had no control over his actions. Therefore, even if Mr. Sanders did advise Mr. Harris to lie, (which conclusion seems more probably than not) this fact alone does not demonstrate that Mr. Harris was terminated by ACS for telling the MDEQ about the spills.

In short, Mr. Harris has not carried his burden to show that he was discharged for reporting the illegal spills to the MDEQ. To the contrary, the weight of the evidence supports ACS' defense that Harris was discharged for lying to the MDEQ in the first place. Therefore,

Mr. Harris' claim for wrongful discharge in contravention of *McArn* is denied. Further, Mr. Harris' motion to reconsider the dismissal of his claim for punitive damages is denied as moot.

New Orleans, Louisiana, this ____17th____ day of January, 2006.

_____
Arbitrator, Denise M. Pilié